**UNITED STATES of America,**

**v.**

**Dominick J. NATALE et al., Defendants.**

**No. 483–62.**

United States District Court
D. New Jersey.

Jan. 28, 1966.

Raymond A. Brown, Jersey City, N. J., for Frank Mancinelli, Romeo Mattia, Joseph Mattia, Gerard A. Perna, John Raio.

Humphrey Famularo, Newark, N. J., for Dominick J. Natale.

George R. Sommer, Newark, N. J., and John E. Toolan, Perth Amboy, N. J., for Mervyn Robitzek.

S. Chris Franzblau, Newark, N. J., for Sidney Albert.

Joseph R. McMahon, Newark, N. J., for Hans Walter Grote.

Toolan, Haney & Romond, Perth Amboy, N. J., for Mervyn Robitzek.

Milton Breitman, Newark, N. J., for Howard N. Garfinkle.

Anthony A. Calandra, Newark, N. J., for Romeo and Joseph Mattia.

Michael A. Querques, Orange, N. J., for Frank Micelli and Frank Capizzi.

WORTENDYKE, District Judge.

In a Federal indictment by the Grand Jury for the District of New Jersey filed in this Court on October 24, 1962 Dominick J. Natale and thirteen other individuals were charged with having violated 18 U.S.C. § 371 by conspiring with each other and with other unknown persons to violate §§ 2314 and 2315 of the aforesaid title. The unlawful objects of the charged conspiracy were stated to be the transportation in Interstate Commerce, to places in other states of the United States and to the Dominion of Canada, with fraudulent intent, of counterfeit coupon bonds of General Motors Acceptance Corporation, with knowledge of their counterfeit character. Among the overt acts charged against the defendant, Natale, was participation by him in the photographing, printing and counterfeiting of 3,000 21 year, 5%, 1980 Series General Motors Acceptance Corporation bonds, each bond in the principal amount of $1,000, between August 1, 1961 and December 20, 1961.

Some of the defendants who were charged with conspiring pleaded guilty to that offense. Others, including Natale, pleaded not guilty thereto and were tried in this Court with a jury between June 17 and July 9, 1965. Natale and all but one of the other defendants who stood trial were convicted by the jury's verdict.

Natale timely moved this Court for a new trial upon the following three grounds, viz.: (1) Insufficiency of the evidence to support the finding of Natale's guilt of the conspiracy charged; (2) Prejudicial comments made by the prosecution during its summation; (3) Error in the Court's charge resulting in coercion of the jury by instructions tending to limit the jury's deliberations.

In his brief in support of his motion Natale makes the following contentions, viz.: (1) The evidence against him was insufficient to sustain his conviction; (2) the Court charged the jury erroneously (a) by declining to charge Natale's theory of defense, (b) by charging that if defendants violated 18 U.S.C. § 2314 they could be found guilty; and (3) a new trial should be granted because prejudicial newspaper publications prevented a fair trial.

## THE SUFFICIENCY OF THE EVIDENCE

We recognize that, in multi-defendant conspiracy cases the court should carefully scrutinize and separately weigh the evidence relating to each defendant to avoid inferences of guilt from evidence merely of association with other defendants as to whom the evidence of conspiracy may be substantial. At the same time we bear in mind the established principle that circumstantial evidence is sufficient to sustain conviction under 18 U.S.C. § 371, and that such circumstantial evidence need not be inconsistent with every conclusion save that of guilt; provided the evidence establishes a case from which the jury can find the defendant guilty beyond a reasonable doubt. United States v. Monticello, 3rd Cir. 1959, 264 F.2d 47; United States v. Giuliano, 3rd Cir. 1959, 263 F.2d 582; United States v. Olivo, 3rd Cir. 1960, 278 F.2d 415. We are further guided, in passing upon the sufficiency of evidence to sustain a conviction, by the directive that the evidence must be weighed in a view most favorable to the Government, and that if, when so viewed, the conviction is sustained by circumstantial evidence it must be upheld. United States v. Carlucci, 3rd Cir. 1961, 288 F.2d 691, cert. den. 1961, 366 U.S. 961, 81 S.Ct. 1920, 6 L.Ed.2d 1253.

Of the several judicial decisions which the research of counsel and the court has discovered, United States v. Falcone, 1940, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128; Ingram v. United States, 1959, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503; United States v. Carlucci, supra, and United States v. Gerke, 3rd Cir. 1942, 125 F.2d 243, cert. den. 1942, 316 U.S. 667, 62 S.Ct. 1033, 86 L.Ed. 1742, appear to be factually most suggestive of the circumstances disclosed by the evidence in the present case. A brief review of the facts disclosed in the opinions in these cited cases may serve to afford patterns against which the sufficiency of the evidence in the case before us may be appraised. In *Gerke*, supra, that named defendant and others were charged with conspiracy to import alcohol unlawfully into the United States. The operations of the conspirators by means of which the importation was accomplished involved the purchase and repair of an ocean going vessel (The Leffler) and the transfer of cargo therefrom to a place or places in the United States. The only evidence upon which the defendant Gerke could be found connected with the conspiracy was that which disclosed that at the time a vessel from which the Leffler obtained her cargo off the United States coast had been loading at Antwerp, Belgium, Gerke was on the quay in conversation with agents for a local distillery. Gerke returned from Europe to the United States shortly thereafter. He was again seen on the dock at Yarmouth, Nova Scotia, talking with the captain of another vessel as she was about to sail from that port. The latter vessel discharged a cargo of alcohol at night at an old brickyard on the Raritan River in New Jersey where Gerke came on board when the vessel arrived. He was seen at Nova Scotia ports when each of two other alcohol-laden vessels sailed therefrom. In holding that the evidence was sufficient to support a verdict against Gerke for conspiracy, Judge Maris had this to say, 125 F.2d at page 245 of his opinion: "It is difficult to conceive that merely a succession of consequences was responsible for Gerke's presence in Halifax and Yarmouth (Nova Scotia), in New Jersey and in Antwerp, Belgium, just as cargoes of alcohol were either being loaded or unloaded upon the Reo 1, the Augusta and Raymond, and the Hillfern. The only credible explanation of his peripatetic activities is that he was directly concerned in the purchase of the alcohol and its transportation to and importation into the United States." Accordingly the judgment against Gerke was affirmed. With respect to two of the other alleged conspirators, the Court, relying upon United States v. Falcone, supra, reversed the judgments against them. The Falcone rule was stated in *Gerke* to be that: " * * * [E]vidence of the furnishing of supplies to an illicit distiller with

knowledge that they were to be used illicitly was not sufficient to convict the one who furnished the supplies of membership in a conspiracy to which the distiller was a party, but of which the supplier was not shown to have had any knowledge." The *Gerke* opinion also states (same page) that " * * * the finding that these defendants [whose convictions were reversed] for profit sold a vessel to persons who they knew intended to and later did use it in an illegal enterprise will not support their conviction for the offense with which they are charged in the third count of the indictment. For there is no evidence that they participated in the conspiracy or knew of its existence." The opinion in Falcone (311 U.S. p. 210, 61 S.Ct. p. 207) states that, "The gist of the offense of conspiracy * * * is agreement among the conspirators to commit an offense attended by an act of one or more of the conspirators to effect the object of the conspiracy." The Court adds that "Those having no knowledge of the conspiracy are not conspirators (citing cases); and one who without more furnishes supplies to an illicit distiller is not guilty of conspiracy even though his sale may have furthered the object of a conspiracy to which the distiller was a party but of which the supplier had no knowledge." *Falcone* is not completely apposite here however. The facts in that case simply did not indicate criminal involvement. Rather, as the Court decided, they fell on the innocent side of that shadowy, elusive line which separates conspiracy from overlapping forms of cooperation, criminal or otherwise. In Falcone the defendants made sales, otherwise legitimate, to illicit distillers knowing "that the materials would be used for illicit distilling * * *" (Falcone, 311 U.S. p. 208, 61 S.Ct. p. 205). "But it could not be inferred from that or from the casual and unexplained meetings of some of the respondents with others who were convicted as conspirators that respondents knew of the conspiracy", (Falcone, 311 U.S. p. 210, 61 S.Ct. p. 206).

In the instant case the indictment charges that the conspiracy alleged had for its *object* the substantive offense of interstate transportation of counterfeit corporate securities. Such an offense would violate 18 U.S.C. § 2314. The gist of the offense proscribed in § 2314 is the transportation in interstate commerce, with fraudulent intent, of counterfeit securities knowing them to have been counterfeited. Here the facts are quite different than in *Falcone*. We have a direct response that Natale, as well as the other defendants tried, was "actually responsible for making the bonds or made them." This testimony was by the Government's paid informant, upon whose testimony the jury obviously had to rely to a great extent, since it constituted a very necessary element of the Government's case against the other convicted defendants. The evidence is virtually compelling that Natale knew that he was counterfeiting bonds. An almost inescapable inference from the work he performed—work which necessitated repeated close observation of the bonds or images of the bonds—is that he read the words on the bonds which indicated they were printed by the American Bank Note Company and were to be cashed in New York. Also, here there were no " * * * casual and unexplained meetings * * * with others who were convicted as conspirators * * * *", such as the meetings in *Falcone*. Natale was selected by the Mattia people to do this work. The evidence indicated that while the counterfeiting operation was in progress, he worked in their building, at night, for the most part, on this job, in their company, and under their supervision for a period of weeks.

In the case at bar, Natale's regular and usual employment was with a corporation unrelated to the Mattia Printing Company. Outside of his regular employment hours with his employer, he would work occasionally for the Mattia Company on a part-time basis, for which he received wages of from $4.00 to $5.00 per hour. The testimony disclosed that during the entire year of 1961, he worked

for the Mattia Company only about 60 hours. It was established that Natale was an expert in the photographic phase of manufacturing plates used in the offset printing field. He had been working for his regular employer for a period of 14 years, and was foreman of its negative and plate department. The principal business of Natale's employer, Davidson Sales and Service Agency, was the making of plates for printers. The Mattia Company was one of its customers. Natale was a specialist in the photographic work involved in offset printing.

There was testimony in the present case that Natale, during nighttime hours, participated with employees of the Mattia Company in the counterfeiting of GMAC Bonds. The counterfeiting process was described in detail by an expert witness and amply explained by the use of exhibits on the trial. Natale, testifying in his own behalf, generally denied participation in the counterfeiting operation. His association with the employees of the Mattia Company is inferable from the testimony of a former employee of the company (who became a paid informant of the Government) that Natale was seen by him in the company of the Mattia employees during nighttime hours at the Mattia plant while the counterfeiting process was in progress.

Although there was other evidence pending to negate the effect of the evidence noted above, for the purposes of this motion, we must view the evidence in the light most favorable to the Government.

■ There was sufficient evidence to justify inference that Natale participated with Mattia employees in counterfeiting GMAC Bonds. There was ample evidence in the form of legends upon the bonds, and upon their coupons, that, in order to realize upon the bonds financially their transportation in interstate commerce would be required. That Natale knew that the bonds were being counterfeited, and that they would probably be transported in interstate commerce, is reasonably inferable from the proofs.

■ A person may be guilty of a conspiracy even though he is absent when the crime which is the object of the conspiracy is committed. His knowledge as to the scope of the conspiracy may be limited; he need not know the details of the plan or operations in furtherance thereof. Knowledge of membership in the conspiracy, the part played by each of the members and the division of the spoils is immaterial. He must know the purpose of the conspiracy, however, otherwise he is not guilty. Marino v. United States, 9th Cir. 1937, 91 F.2d 691, 696, 113 A.L.R. 975. "Once the existence of a conspiracy is clearly established, slight evidence may be sufficient to connect a defendant with it." Poliafico v. United States, 6 Cir. 1956, 237 F.2d 97, 104; cert. den. 1957, 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597; citing United States v. Cohen, 3rd Cir. 1952, 197 F.2d 26.

## THE INSTRUCTIONS TO THE JURY

Joint Requests to Charge were submitted in behalf of all of the trial defendants collectively. The requests numbered 40 in all. Request numbered 29 was as follows:

"29. Although one may become a member of a conspiracy without full knowledge of all the terms of the conspiracy, a person who has no knowledge of conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator." The Court refused to charge the foregoing request "because I have already repeated the charge in my main charge." However the court did charge defendants' request numbered 32 which is as follows:

"32. Without knowledge, the intent to commit the crime charged cannot exist. Furthermore, to establish the intent, the evidence of knowledge must be clear and unequivocal. This because charges of conspiracy are not to be made out by building inference upon inference." The request of defendants numbered 29 which the Court refused to charge, was preceded by defendants' request numbered 28

which was charged, and which read as follows:

"28. Four essential elements are required to be proved in order to establish the offense of conspiracy charged in the indictment:

"First: That the conspiracy described in the indictment was willfully formed and was existing at or about the time alleged.

Second: That the accused willfully became members of the conspiracy.

Third: That one of the conspirators thereafter knowingly committed at least one of the overt acts charged in the indictment, at or about the time and place alleged; and,

Fourth: That such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged."

The Court also charged the following requests of defendants:

"23. The defendants in this case, are entitled to an acquittal unless the proof submitted satisfies you beyond a reasonable doubt that they committed the crime of conspiracy. The burden is on the Government to prove every element of this offense beyond a reasonable doubt, and if any element has not been proved beyond a reasonable doubt, you must acquit these defendants."

"26. The charge is that of conspiracy in this case. In order to prove a conspiracy, the Government must satisfy you beyond a reasonable doubt that these defendants combined, confederated and agreed with others to commit the offense charged in the indictment, and that thereafter, in furtherance of this agreement, they committed certain acts to effect the object of the conspiracy."

"27. In every conspiracy there must be proof beyond a reasonable doubt that the persons named therein did knowingly participate and knowingly commit some act in furtherance of the objects of the conspiracy."

The Court also charged, by supplement, defendants' fourth request to charge as follows:

"In a criminal case, guilt is wholly personal and no man can be convicted unless he himself is guilty of a criminal act or omission and he himself is guilty of a criminal intent, and there cannot be attributed to him such act or omission and intent by reason of the actions, omissions or misconduct of another. I modify that by this addition: unless you find that the particular individual was a participant in a conspiracy to commit a substantive offense against the United States."

In its main charge the Court specifically instructed the jury that (1) the indictment charged the defendants with conspiracy to violate 18 U.S.C. §§ 2314 and 2315; (2) the jury must determine whether a conspiracy existed and who participated therein; (3) the trial defendants were charged with having photographed, printed and counterfeited the corporate bonds and with conspiring to bring about interstate transportation of such counterfeit bonds; (4) the single overt act in which the trial defendants were alleged to have participated in furtherance of the objects of the conspiracy was the photographing, printing and counterfeiting of the securities during the period of the existence of the alleged conspiracy; (5) if the jury found reasonable doubt that the securities were printed at the Mattia Press or, if printed there, were not printed for the purpose of transportation in interstate commerce, the defendants should be acquitted; but if the jury should find beyond a reasonable doubt that a defendant participated in the printing of the bond with the intention or expectation that they would be transported in interstate commerce the jury might find that defendant guilty of the offense charged."

The Court's main charge further reminded the jury that "You should at all times bear in mind, in considering the evidence in this case, that the trial de-

fendants are charged *only with conspiring* to violate certain provisions of §§ 2314 and 2315 of the Criminal Code of the United States."

The Court thereupon immediately read to the jury the pertinent provisions of § 371 of Title 18 of the United States Code, and followed this reading with a definition and illustrations of a conspiracy as the term is used in the statute, as well as the legal effect of participation in a conspiracy. Repetitiously, the Court again reminded the jury that "The accusation against these defendants, these trial defendants, is that they participated in furtherance of a conspiracy to violate the provisions of §§ 2314 and 2315 of the Criminal Code of the United States."

Twice more in its main charge the Court reemphasized that the trial defendants were charged solely with participation in a conspiracy; thus making it crystal clear that the trial defendants were *not* being charged with the substantive offenses defined in §§ 2314 and 2315, and, more particularly, that they were *not* being charged with *counterfeiting* the securities. In this immediate connection the Court stated: "We are here and we have been here all these weeks trying this case, trying to determine whether any or all of the trial defendants in this case conspired with any of the other defendants or with persons unknown to bring about an ultimate interstate transportation of counterfeited bonds. It's as simple as all that."

Finally the jury was instructed that in order to find any of the trial defendants guilty of the offense charged against him in the indictment the jury must be satisfied by the evidence beyond a reasonable doubt that he, with one or more other persons, conspired to transport or caused to be transported in interstate commerce counterfeited GMAC Bonds, and that in furtherance of such a conspiracy one or more of the members of the conspiracy caused or participated in the counterfeiting of such bonds for the purpose of such transportation.

■ The Court was not required to adopt the specific language of a party submitting a request for instructions even if such a request embodied an essential element of the case for the party making the request, as long as the substance of the request was clearly included either in the Court's main charge, or elsewhere among the requests for instructions submitted by the party.

■ There was no error in the trial court's refusal to charge defendants' request numbered 29.

■ The moving defendant incorrectly contends that the trial court's instructions to the jury included the statement that "If defendants violated 18 U.S.C. § 2314 they could be found guilty." In support of this contention movant picks out of the context of the Court's main charge the following language: "If, on the other hand, the evidence convinces you beyond a reasonable doubt that one or more of the trial defendants ordered, directed or participated in the printing or manufacturing of counterfeit bonds with the intention or expectation that they would be transported in interstate commerce or foreign commerce, then you may find such defendant, or defendants—such of the trial defendants guilty of the offense charged in the indictment." Preceding the foregoing quoted excerpt from the Court's charge the jury had been instructed that the trial defendants were charged with conspiracy and that "While the indictment charges that the trial defendants conspired with others to bring about the interstate transportation of the counterfeit securities, the single overt act in which the trial defendants were alleged to have participated in furtherance of the objects of the charged conspiracy is alleged to have been the photographing, printing and counterfeiting of the securities in question during the period stated." The charge was replete with emphasis of the fact that the trial defendants were charged *with conspiracy alone,* and *not* with the substantive offense or offenses alleged to have been the object or objects of the conspiracy. The foregoing review

of the main charge as a whole, as well as of the charged requests of the defendants, discloses no basis for movant's contention that the trial defendants could be found guilty if they violated either of the sections proscribing the offenses charged as objects of the conspiracy.

### ALLEGED PREJUDICIAL NEWSPAPER PUBLICATIONS

The final ground upon which the present movant bases his application for a new trial is to be found in his statement that, during the course of the trial, newspaper accounts of the trial proceedings prejudicially prevented a fair trial of movant. We reject this contention for reasons which will be apparent from a perusal of the balance of this opinion.

■ During the course of the trial, defense counsel, out of the presence of the jury, brought to the court's attention press accounts of the progress of the trial, and contended that such accounts were prejudicial. The court thereupon interrogated each member of the jury, separately in open court, in the presence of the defendants and their attorneys, for the purpose of ascertaining whether the newspaper reportings complained of had been read by the juror and, if so, whether the reading thereof had created any prejudice in the juror's mind. This interrogation completely satisfied the Court that nothing reported by the press respecting the trial was or could have been prejudicial to the defendants or any of them. Besides admonishing each of the jurors when interrogated, the Court in its charge repeated its caution in the following language: "As far as the necessity of relying exclusively upon the evidence is concerned, I should call your attention to an objection or a motion which was made during the course of the trial with respect to certain newspaper accounts of proceedings during the trial of this case. You will recall that, in accordance with an appropriate application or applications, I called each of you in and asked you about it. Of course, you will not permit anything that you may have read in the newspaper accounts during this trial to influence your judg-

ment. In the first place, it is purely hearsay; in the second place, whoever wrote the article was not under oath; in the third place, it may or may not be that what was stated in the article was at variance with your recollection of what the facts were as far as the evidence was concerned. I have complete confidence in each of you, all together to feel as a result that anything that may have been reported in the newspaper regarding any aspect of the trial of this case will not influence you one iota in your ultimate decision.

The motion of the defendant, Dominick J. Natale, for a new trial is denied and a draft of appropriate order to that effect may be presented.