UNITED STATES of America,
Plaintiff,

v.

Clarence PENNINGTON, Defendant.

No. 99–20277 D V.

United States District Court,
W.D. Tennessee,
Western Division.

Sept. 22, 2000.

Thomas A. Colthurst, Assistant U.S. Attorney, Memphis, TN, for Plaintiff.

Leslie I. Ballin, Memphis, TN, for Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING OBJECTIONS

Donald, District Judge.

Defendant Clarence Pennington ("Defendant") was indicted on one count of possessing with the intent to distribute approximately 79.2 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). Defendant filed a motion to suppress evidence seized during the execution of a search warrant at his house located at 768 Richmond in Memphis, Tennessee. Defendant contended that the search warrant was improperly issued by a judicial commissioner whose authority was derived from an unconstitutional statute and that the officers failed to properly knock and. announce their presence in violation of the Fourth Amendment before forcibly entering his house by prying open the door with a pry bar and a battering ram. The motion was referred to the United States Magistrate Judge for an evidentiary hearing and proposed findings of fact and conclusions of law.

The Magistrate Judge conducted an evidentiary hearing on August 21, 2000, and on August 28, 2000, issued her Report and Recommendation.

On September 6, 2000, Defendant timely filed a general objection to the Report and Recommendation.

A district judge may designate a magistrate judge to conduct hearings and submit proposed findings of fact and recommendations for disposition for certain dispositive motions, including a motion to suppress. 28 U.S.C. § 636(b)(1)(B); *United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980): *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir.1993).

After the magistrate judge files proposed findings and recommendations, a party has ten (10) days to file written objections to the magistrate judge's report, 28 U.S.C. § 636(b)(1)(C); *Raddatz*, 447 U.S. at 673, 100 S.Ct. 2406; *Massey*, 7 F.3d at 509. If a party fails to file written objections within ten (10) days, then the right to object is waived. *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 508 (6th Cir.1991). The district judge shall make a *de novo* determination of those portions of the report to which objection has been made. The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1)(C); *Raddatz*, 447 U.S. at 673, 100 S.Ct. 2406; *Massey*, 7 F.3d at 509.

The phrase *"de novo* determination" does not mean that the objecting party is entitled to a *de novo* hearing. *Raddatz*, 447 U.S. at 673, 100 S.Ct. 2406. *Flournoy v. Marshall*, 842 F.2d 875, 877–79 (6th Cir.1988). Rather, it just means that the district judge should independently review the law, the record, and the magistrate judge's report with regard to the objections raised. *Thomas v. Arn*, 474 U.S. 140, 142, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Flournoy*, 842 F.2d at 878–79. Ultimately, the district judge is given the widest discretion to accept, reject, or modify the magistrate judge's proposed findings and recommendations. *Flournoy*, 842 F.2d at 877 n. 3. The court is required to address each objection to a magistrate judge's proposed findings of fact and recommendation for disposition.

The essence of Defendant's claim is whether eight to ten seconds is a reasonable time to wait before forcing entry into one's home. Determination of what constitutes a reasonable time depends on the facts and circumstances of each case. *United States v. Chambers*, 382 F.2d 910, 916 (6th Cir.1967). The Sixth Circuit has held that waiting ten (10) seconds may be reasonable. See *United States v. Gatewood*, 60 F.3d 248 (6th Cir.1995); *United*

*States v. Johnson,* 2000 WL 712385, No. 98–3183 (6th Cir. May 24, 2000) (5 seconds held to be reasonable).

An officer serving a search warrant at a house absent exigent circumstances must announce: (1) the authority under which he is acting; and (2) the purpose of his call. 18 U.S.C. § 3109.

After conducting a *de novo* review of the record, the court **adopts** the report of the magistrate judge as its findings, **denies** Defendant's general objections, and **denies** Defendant's motion to suppress for the reasons stated in the Report and Recommendation.

## REPORT AND RECOMMENDATION

VESCOVO, United States Magistrate Judge.

Defendant Clarence Pennington has been indicted on one count of possessing with the intent to distribute approximately 79.2 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). Presently before the court is Pennington's motion to suppress evidence seized during the execution of a search warrant at his house located at 768 Richmond in Memphis, Tennessee. Pennington contends that the search warrant was improperly issued by a judicial commissioner whose authority was derived from an unconstitutional statute and also that the officers failed to properly knock and announce their presence in violation of the Fourth Amendment before forcibly entering his house by prying open the door with a pry bar and a battering ram. The motion was referred to the United States Magistrate Judge for an evidentiary hearing and proposed findings of fact and conclusions of law.

At the evidentiary hearing held August 21, 2000, the government called four witness—Detective Bernice Black, Detective Paul Wright, Officer Russ Tilton, and Lt. Berryhill, all from the Memphis Police Department. Pennington called William Jen-

nings, Tommy Eldridge, and Patrick Hayes as witnesses.

For the reasons stated below, it is recommended that the motion be denied.

### PROPOSED FINDINGS OF FACT

On November 26, 1999, Detective Bernice Black of the Memphis Police Department's Organized Crime Unit[1] obtained a search warrant from Ronald Johnson, a Shelby County judicial commissioner, for the search of "a single family dwelling ... known as 768 Richmond." The warrant was based on information received from a reliable informant that had observed Pennington storing and selling cocaine in the residence.

As part of her job, Detective Black routinely obtains search warrants. For several years, the Shelby County General Sessions Criminal Court Judges issued the warrants. In October 1998, the General Sessions Criminal Court Judges Administrative Office sent a memo to police officers advising that three judicial commissioners had been appointed by the Shelby County Commission to issue search warrants twenty-four hours a day, seven days a week. Since that time, Detective Black has obtained her search warrants from the commissioners.

On the afternoon of November 30, 1999, at around 3:45 p.m., a team of approximately six to seven Memphis Police Officers converged on the residence located at 768 Richmond to execute the search warrant. The team included Detective Black, Detective Wright, Officer Tilton, Lt. Berryhill, and Officer Twilley. Most of the officers drove to the house in a van while Officer Tilton followed in a separate vehicle. All of the officers were wearing blue shirts marked "Police." Each officer had an assigned, preplanned role in the execution of the warrant. Detective Wright was to lead the way, Officer Twilley was to "pick" the door if necessary,[2] and Lt. Ber-

---

1. The Organized Crime Unit has recently been renamed Vice and Narcotics.

2. To "pick" the door means to use a pry bar or crowbar-like device to force open the door.

ryhill was to use the battering ram if necessary.

Upon arriving at 768 Richmond, the officers parked the van on the street in front of the house. Richmond is a narrow, one-way residential street with cars generally parked along the curb on both sides. A chain-link fence surrounds the house.

Detective Wright testified that he was the first person to make it through the gate and reach the house. When he reached the front door, he banged on the door and yelled very loudly, "Memphis Police Department. Search warrant." According to Detective Wright, he then heard footsteps that started loudly and then became softer as if someone was running away from the door. He admonished the other officers, who had not yet reached the door, to hurry up. Officer Twilley picked the door, and Lt. Berryhill rammed the door. Detective Wright estimated that eight to ten seconds elapsed between his announcement and picking the door. Officer Tilton was the last officer to reach the porch because he had stopped to try to remove some keys hanging on the chain link fence. He testified that while he was still at the gate, he clearly heard Detective Wright pound on the door and announce "Police." He believed approximately ten seconds elapsed between knocking and entering. Detective Black corroborated the testimony of Detective Wright and Officer Tilton, although she could not identify the officer who spoke. Detective Black estimated that approximately eight seconds elapsed between the announcement and the door being picked. Lt. Berryhill testified that he was the last one out of the van as he was carrying a twenty-five pound battering ram. According to his testimony, as he arrived on the porch, he heard Detective Wright announce "police" and "search" and then say something about people running. He estimated eight to fifteen seconds elapsed between the announcement and the door being opened.

After forcing the doors open, Lt. Berryhill stepped aside and let the other officers enter first. Once inside, Detective Wright searched the living room and kitchen but found no one. The other officers found Pennington in the hallway and a female in the bedroom.

All three defense witnesses testified that they did not hear any officer knock, identify themselves, or announce their purpose before the door was battered down. Indeed, all three defense witnesses claimed that the officers were very silent before the door was forced open, then began yelling "Police! Get down!" Each of the three defense witnesses claimed to have been within hearing distance of the officers and able to view all the activities of the officers. According to William Jennings' testimony, he was seated on the front porch of a friend's house across the street from 768 Richmond. Tommy Eldridge testified, however, that he and Jennings were in Jennings' car parked on the street when the officers pulled up and raided the Pennington house. Patrick Hayes was on the porch of his house across the street from the Pennington house when the police arrived and forced entry into the house. All three witnesses testified that they had not discussed their observations or testimony or the event in question with anyone since the day it happened.

The primary factual dispute is whether the officers knocked on the door and announced their presence and purpose. All three defense witnesses testified that the officers did not knock and announce their presence and purpose but instead just burst into the house. All four officers testified that Detective Wright knocked and identified the officers and their purpose.

The government urges the court to disbelieve the defense witnesses' testimony because of factual inconsistencies and because it is simply incredible that they did not discuss these events with anyone. As to the knocking and announcing, the court finds the testimony of the officers to be more credible than the defense witnesses because of the factual inconsistency between Jennings' and Eldridge's testimony

and therefore finds as fact that Detective Wright knocked, identified himself, and announced his purpose. The court further finds as fact that eight to ten seconds elapsed between the knocking and the forced entry into the house.

## PROPOSED CONCLUSIONS OF LAW

### I. The Search of the House

 Pennington asserts that the search of his house was conducted unlawfully and in violation of the Fourth Amendment because the officers executing the warrant failed to properly knock and announce their presence before entering the apartment.[3] Alternatively, he contends that even if the officers properly identified themselves and their purpose, they failed to wait a reasonable time for a response before forcing entry. In response, the United States maintains that the officers knocked loudly on the door and identified themselves as police officers executing a search warrant; no one responded; and after waiting a reasonable period of time

to be admitted, they forced the door open and entered the house.

 On charges of illegal entry, the defendant bears the burden of establishing a prima facie case of a Fourth Amendment unannounced entry or a failure to comply with the "knock and announce" requirements of 18 U.S.C. § 3109. See United States v. Murrie, 534 F.2d 695, 698 (6th Cir.1976). See also United States v. Mueller, 902 F.2d 336, 344 (5th Cir.1990). The Fifth Circuit has noted that "[t]he burden is not great, and parallels the necessity that a defendant assert a search was conducted without a warrant before the government is forced to proved that the search was reasonable within the confines of the Fourth Amendment." Mueller, 902 F.2d at 344 (quoting United States v. Gardner, 553 F.2d 946, 949 (5th Cir.1977)). Once a defendant has proved a prima facie case of illegal entry, the burden shifts to the government to prove the search was reasonable under the Fourth Amendment or complied with § 3109 or noncompliance

**3.** The "knock and announce" requirement is codified at Title 18 U.S.C. § 3109. That section provides as follows:

> Breaking doors and windows for entry and exit—The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he · is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

Section 3109 has been described as a codification of common law of unannounced entry. See Sabbath v. United States, 391 U.S. 585, 589, 591 n. 8, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); Rodriguez v. Jones, 473 F.2d 599, 607 (5th Cir.1973). If one reads into the statute certain developing exceptions, the statute is a definition of the manner of search of a private residence that is reasonable under the Fourth Amendment. See United States v. Francis, 646 F.2d 251, 255 (6th Cir.1981).

Because it is a federal statute, section 3109 applies specifically to federal officers, Sabbath, 391 U.S. at 588–89, 88 S.Ct. 1755, and is not technically applicable when "state officers, acting totally without federal involvement, seize evidence that is later offered in a federal prosecution," United States v. Gatewood, 60 F.3d 248, 249 (6th Cir.1995). The

common law knock and announce principle upon which the statute is based, however, forms a part of the Fourth Amendment reasonableness inquiry. See Wilson v. Arkansas, 514 U.S. 927, 930, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). The case law construing section 3109 is therefore applicable when a search conducted by state officers is challenged in federal court. See United States v. Finch, 998 F.2d 349, 353 (6th Cir.1993) ("The constitutional rights of occupants of private residences do not depend on whether the officers executing a warrant are federal, state or local officers ....")

To comply with the "knock and announce" requirements, a police officer executing a search warrant must notify the occupants of his authority and purpose and be refused admittance before he may forcibly enter the premises. See Miller v. United States, 357 U.S. 301, 313–314, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). See generally W. LaFave, Search and Seizure (2d. Ed.) 1987, § 4.8(c) pp. 277–79. If evidence is procured in violation of section 3109, that evidence must be suppressed. Miller v. United States, 357 U.S. 301, 313–315, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). Failure to comply with section 3109 may be justified where exigent circumstances exist. United States v. Nabors, 901 F.2d 1351, 1354 (6th Cir.1990).

was justified because of exigent circumstances. *See United States v. Bates,* 84 F.3d at 794; *Murrie,* 534 F.2d at 697–98.

In the instant case, Pennington presented sufficient proof to make a prima facie case that the officers did not identify their authority and purpose and did not wait a reasonable time after knocking and announcing before ramming the door. All three defense witnesses were located where they could see the door and hear what was happening. They testified that they never heard a knock or an announcement, but just the sudden battering of the door.

Once a prima facie case is established, the burden shifts to the government to prove its actions were reasonable. *Mueller,* 902 F.2d at 344. To satisfy its burden, the government produced four police officers. Based on the factual finding proposed above, it is submitted that Detective Wright satisfied the knock and announcement prong by knocking on the door, identifying himself as a Memphis Police Department officer, and stating that he had a search warrant.

■ The sole legal issue therefore is whether eight to ten seconds is a reasonable time to wait before forcing entry. What is a reasonable time depends on the circumstances of each case. *See United States v. Chambers,* 382 F.2d 910, 916 (6th Cir.1967). The Sixth Circuit has stated that it will carefully scrutinize cases in which officers make a forced entry seconds after announcing their authority or purpose. *See Bates,* 84 F.3d at 794; *United States v. Nabors,* 901 F.2d 1351, 1355 (6th Cir.1990). In *Nabors,* the Sixth Circuit upheld a forced entry "moments" after knocking because of the existence of exigent circumstances: (1) Nabors was suspected of trafficking in drugs which could easily have been disposed of; (2) Nabors was known to be in possession of firearms; (3) Nabors was known to habitually wear a bullet proof vest; and (4) Nabors had been previously convicted of possessing firearms.

The Sixth Circuit has recognized that a forced entry into a residence approximately ten seconds after announcement may be reasonable. *See United States v. Gatewood,* 60 F.3d 248 (6th Cir.1995) (upholding a drug search involving an entry into a residence approximately ten seconds after announcement); *United States v. Johnson,* 2000 WL 712385, No. 98–3183 (6th Cir. May 24, 2000) (unpublished opinion) (upholding a five second wait between knocking and entering when officers knew drugs were present in the house as a result of a controlled delivery).

Other courts have found a wait of ten to fifteen seconds before forcibly entering a residence to be reasonable. *See United States v. Jones,* 133 F.3d 358, 361 (5th Cir.1998) (holding 15 to 20 seconds was reasonable amount of time for state police officers to wait before entering an apartment to execute a search warrant for drugs after knocking and announcing their presence); *United States v. Spriggs,* 996 F.2d 320, 322–23 (D.C.Cir.1993) (Ginsburg, J.) (holding failure of occupants to respond within 15 seconds of announcement, even when they claimed they were unable to hear the knock, justified inference of constructive refusal of admittance); *United States v. Garcia,* 983 F.2d 1160, 1168 (1st Cir.1993) (finding a wait of ten seconds after knocking combined with an announcement before forced entry was reasonable).

In the present case, the search warrant was executed at a reasonable time in the afternoon when people are expected to be awake. Drugs had been observed in the residence as recently as one week before. Most importantly, however, Detective Wright heard what he perceived to be someone running away from the door. It is submitted, therefore, that under the circumstances, eight to ten seconds was a reasonable period of time to wait before forcing entry into the residence, and there was no Fourth Amendment violation.

## II. The Judicial Commissioner's Authority

Pennington next mounts a constitutional attack on the authority of the judicial commissioner to issue a warrant.[4] Pennington insists that the search warrant issued by the judicial commissioner is invalid because the statute authorizing the appointment of judicial commissioners by the County Commission violates Article 6, Section 4 of the Tennessee Constitution which requires that all judges be elected.[5] Citing *State ex rel. Town of South Carthage v. Barrett*, 840 S.W.2d 895 (Tenn.1992), Pennington further contends that allowing a legislative body to appoint a judicial officer violates the separation of powers doctrine. In response, the government maintains that irrespective of the constitutionality of the statute, the evidence seized should not be excluded under the good faith exception to the exclusionary rule for searches conducted pursuant to warrants set forth in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

Judicial commissioners derive their authority to issue search warrants from Tenn.Code Ann. § 40–1–111. It provides in pertinent part:

(a)(1)(A) The chief legislative body of any county having a population of ... over 700,000 ... may appoint one or more judicial commissioners whose duty or duties shall include, but not be limited to, the following:

(i) issuance of search warrants and felony arrest warrants upon a finding of probable cause and pursuant to requests from on-duty law enforcement officers and in accordance with the procedures outlined in chapters 5 and 6 of this title;

(ii) Issuance of mittimus following compliance with the procedures prescribed by § 40–5–103;

(iii) The appointing of attorneys for indigent defendants in accordance with applicable law and guidelines established by the presiding general sessions judge of the county;

(iv) The setting and approving of bonds and the release on recognizance of defendants in accordance with applicable law and guidelines established by the presiding general sessions judge of the count; and

(v) Issuance of injunctions and other appropriate orders as designated by the

---

4. In a federal lawsuit to which the state is not a party, but the constitutionality of a state statute is drawn into question, the court is required to certify such fact to the attorney general of the state. 28 U.S.C. § 2403(b). Section 2403(b) provides:

In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality.

Neither the state of Tennessee nor any agency, official, or employee thereof is a party to this proceeding. However, because it is not necessary for a resolution of this motion to determine the constitutionality of the statute, it is recommended that no notice be given.

5. The relevant provisions of the Tennessee Constitution provides:

Article VI, Section 1:

Judicial power.—The judicial power of this State shall be vested in one Supreme Court and in such Circuit, Chancery and other inferior Courts as the Legislature shall from time to time, ordain and establish; in the Judges thereof, and in Justices of the Peace. The Legislature may also vest such jurisdiction in Corporation Courts as may be deemed necessary. Courts to be holden by Justices of the Peace may also be established.

Article VI, Section 4;

Judges of inferior courts.—The Judges of the Circuit and Chancery Courts, and of other inferior Courts, shall be elected by the qualified voters of the district or circuit to which they are to be assigned. Every Judge of such Courts shall be thirty years of age, and shall before his election, have been a resident of the State for five years and of the circuit or district one year. His term of service shall be eight years.

general sessions judges in cases of alleged domestic violence.

(B) The term or terms of the officers shall be established by the chief legislative body of the counties but shall not exceed a four-year term. No member of the county legislative body shall be eligible for appointment as a judicial commissioner ... The legislative body of any county, in appointing, evaluating and making decisions relative to retention and reappointment shall take into consideration views, comments and suggestions of the judges of the courts in which the judicial commissioners are appointed to serve.

(C) In any county having a population greater than seven hundred thousand (700,000) according to the 1970 federal census or any subsequent federal census, to be eligible for appointment and service as a judicial commissioner a person must be licensed to practice law in the state of Tennessee.

Tenn.Code Ann. § 40–1–111 (previously Tenn.Code Ann. § 40–120(a)(1)). This code section has been on the books since 1978, and its constitutionality was upheld in 1981 by a Tennessee appellate court in *State v. Bush,* 626 S.W.2d 470 (Tenn.Crim. App.1981). Relying on *Shadwick v. City of Tampa,* 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972), in which the Supreme Court held that a judicial officer issuing a search warrant need not be a judge or lawyer but must meet only two tests—be neutral and detached and be capable of determining probable cause, the Tennessee appellate court reasoned that the code section in question did not create a "court" but rather a "magistrate" [6] to which office the requirements of Article VI, Section 4 of the Tennessee Constitution were not applicable, and therefore the statute was "not repugnant to either the constitution of the United States or of [Tennessee] ...." *Id.* at 474.

To resolve the pending suppression motion, it is not necessary, however, for the court to even address the constitutionality issues. In *United States v. Leon,* the Supreme Court recognized an exception to the exclusionary rule which the court submits should apply under the circumstances of this case. When an officer, acting with objective good faith, has obtained a search warrant from a detached and neutral magistrate and has acted within its scope, the results of the search are normally not suppressed even if the affidavit is later found to be insufficient to establish probable cause, unless the magistrate abandoned his detached and neutral role, or the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause. *See United States v. Leon,* 468 U.S. 897, 926, 104 S.Ct. 3405 (1986).

At least one federal court has applied the *Leon* good faith exception in the context of a warrant signed and issued by an unauthorized individual. In *United States v. Scott,* 69 F.Supp.2d 1018 (E.D.Tenn. 1999), an officer received a tip from a confidential informant that Donald Scott was growing large quantities of marijuana on his property. The officer approached Hollis Barker, a retired General Sessions Judge, to obtain a search warrant when he was unable to find the only active judge in the county, L. Thomas Austin.[7] "Judge" Barker signed the warrant, which officers executed later that evening. Defendant asserted, correctly, that Hollis Barker could not issue warrants because the Tennessee statute describing who may issue warrants does not include "retired general sessions judges." *Id.* at 1022. Nevertheless, the court held that the police officer "prepared an affidavit and obtained a search warrant from Judge Barker with a reasonable belief in his qualification to is-

---

6. In Tennessee, only magistrates may issue search warrants. *See* Tenn.Code Ann. § 40–6–101 (1997). Magistrates are defined to include judicial commissioners. *See* Tenn.Code Ann. § 40–5–102 (1997).

7. Apparently Judge Austin was in his barn at the time the officer needed the search warrant, and thus unreachable by telephone.

**918**

sue the document," executed the warrant "within the scope of the permissible activity," and that "these actions do not constitute police misconduct." *Id.* at 1024–25. The court reasoned that Judge Barker, although not a qualified magistrate under Tennessee law, was still neutral and detached in his determination of probable cause, and that the deterrent effect of the exclusionary rule would not be furthered by punishing officers for reasonable reliance on the warrants they obtain. *Id.* at 1025.

Even if the judicial commissioner enabling statute at issue in this case were unconstitutional, the search warrant was still issued by a detached and neutral magistrate. Detective Black objectively and reasonably believed the judicial commissioner had the authority to issue a warrant based on the memo she had received; indeed, she had obtained dozens of warrants from the commissioners in the last few years. As the *Scott* court reasoned, Detective Black engaged in no misconduct, and the deterrent purpose of the exclusionary rule would not advanced by punishing Detective Black for reasonably relying on the authority of Commissioner Johnson to issue a search warrant. Under these circumstances, it is submitted that the exclusionary rule should not be applied, given the rationale of *Leon,* and the motion to suppress should therefore be denied.

### RECOMMENDATION

Based on the foregoing, it is recommended that the Pennington's motion to suppress be denied.

### NOTICE

ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN TEN (10) DAYS FROM THE DATE OF THE REPORT. FAILURE TO FILE THEM WITHIN TEN (10) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.

ANY PARTY OBJECTING TO THIS REPORT MUST MAKE ARRANGEMENTS FOR A TRANSCRIPT OF THE HEARING TO BE PREPARED.