**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Vincent SCARTZ, Defendant–Appellant.**

**No. 87–3071.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 18, 1987.

Decided Feb. 8, 1988.

Rehearing and Rehearing En Banc
Denied March 25, 1988.

Max Kravitz (argued), Columbus, Ohio, for defendant-appellant.

Robyn Jones, Asst. U.S. Atty., Columbus, Ohio, Richard D. Letts (argued), for plaintiff-appellee.

Before: JONES, WELLFORD and BOGGS, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Defendant-appellant Vincent Scartz appeals his jury conviction for conspiracy to use and using counterfeit access devices in violation of 18 U.S.C. § 1029(a)(1), (b)(2) and (c)(2) (1982). Scartz alleges that the cumulative errors committed by the trial court denied him a fair trial. Because we find the appellant's arguments without merit, we affirm.

I.

On April 3, 1986, the appellant, along with three others, was indicted by a federal grand jury sitting in the United States Dis-

trict Court for the Southern District of Ohio. The criminal indictment charged all four defendants with conspiracy to use counterfeit credit cards between April 22, 1985 and August 13, 1985. Each of the four defendants was also charged individually and jointly in thirty-two substantive counts with the fraudulent use of credit cards in violation of 18 U.S.C. § 1029(a)(1), (b)(2) and (c)(2) (1982). Scartz was named as a defendant in seven of those charges. His three co-defendants pled guilty to multiple counts of the indictment while Scartz pled not guilty and stood trial.

Scartz's jury trial began before the Honorable John D. Holschuh on August 19, 1986. The testimony and evidence presented at trial demonstrated that from April 22, 1985 through August 13, 1985, Vincent Scartz, Eugene Dell Italia, Joanne Trimble, (a/k/a Jody Trimble), Sandra Cramblett and others used counterfeit credit cards to defraud banks and merchants. With these cards, thousands of dollars worth of merchandise and services were purchased from Scartz's business and other retail stores and restaurants in Ohio and elsewhere.

During this time period, Scartz was the principal owner of a business known as Sports Periodicals. This business sold sports information to people who telephoned or mailed orders to the company. The business was located in an apartment on Bethel Road in Columbus, Ohio. Sandra Cramblett, a co-defendant, was the secretary for the business and responsible for its day-to-day operation. Besides Scartz and Cramblett, Charles E. Maloney, an Indianapolis, Indiana surgeon, maintained a business interest in Sports Periodicals. Maloney was a long time friend of Scartz.

In connection with his partnership interest, Maloney obtained a merchant's VISA and Master Card account through the Indiana National Bank in Indianapolis. This account allowed the business to accept credit cards as a form of payment for goods and services. In setting up this account, Maloney represented to the bank that the business would be operated in Indianapolis. The business, however, never operated from that city.

Upon applying for the merchant's account, Maloney obtained an "imprinter." An imprinter is a machine used by a merchant for the purpose of accepting bank credit cards in payment for goods and services. This particular imprinter was used solely at Sports Periodicals' apartment headquarters in Columbus. Counterfeit credit cards were run through this imprinter resulting in approximately $7,000 being credited to Sports Periodicals' account.

At trial, Denise Evans, the government's key witness, testified that she had been recruited by one of Scartz's co-defendants to use the counterfeit credit cards. She testified that the only requirement for using the cards was that she purchase "x" cartons of cigarettes whenever she purchased anything for herself. She testified that she was told the credit cards were supplied by a man named "Vince."

Evans also testified that she was present on at least one occasion when Joanne Trimble, a co-defendant, received credit cards from Vince at the Riviera Country Club. She claimed that she saw merchandise purchased with the counterfeit cards transferred to the appellant.

Evans reported that she left messages on Sandy Cramblett's recorder about the credit cards and the appellant returned those calls. Evans also testified that at one point the appellant actually directed her to leave the merchandise she had purchased with the credit cards in a car at the Riviera Country Club. She also stated that several times when she met Cramblett to deliver the purchased merchandise Cramblett was accompanied by the appellant.

Mike Gough, the golf professional at the Riviera Country Club, testified that the appellant, in April 1985, asked him whether he would like to purchase golf balls from "Doris" (a/k/a Cramblett). Gough stated that he purchased the balls until August 1985. Credit card drafts completed in conjunction with the use of the counterfeit credit cards show large volumes of golf balls were purchased with the credit cards as part of the scheme of the conspiracy.

Paul Marzluff, the owner of the Furniture Connection, testified that he received a phone call from Scartz, an old friend, on June 25, 1985. He testified that Scartz told him that he would send someone to Marzluff's store to purchase some furniture so as to help out his business. Marzluff stated that Scartz told him the credit cards were probably not good. On June 26, 1985, Cramblett appeared at Marzluff's store and made purchases using two of the counterfeit credit cards.

Appellant's defense to these charges was that he had no involvement whatsoever in the counterfeit credit card scheme. He attempted to discredit the government's witnesses and shift the culpability to his co-defendants who had pled guilty. However, on August 26, 1986, Scartz was found guilty on the conspiracy charge (Count 1) and on a single substantive count of fraudulently using counterfeit credit cards (Count 17). He was acquitted on the remaining substantive charges (Counts 2, 11, 12, 14, 15 and 27).

On January 8, 1987, Scartz was sentenced to three years imprisonment on the conspiracy charge and to a consecutive five year term of probation on the substantive charge. He was ordered to pay restitution and to perform 100 hours of community service. Thereafter, this appeal was filed.

Our standard of review in this case is limited. The United States Supreme Court in *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), set out the governing standard of appellate review in cases such as this one. The *Glasser* Court stated:

> It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it.

*Glasser*, 315 U.S. at 80, 62 S.Ct. at 469 (citing *United States v. Manton*, 107 F.2d 834, 839 (2d Cir.1939)) (emphasis added).

This circuit has reiterated this standard as proper for appellate review of jury verdicts. In *United States v. Wood*, 780 F.2d 555 (6th Cir.) (per curiam), *cert. denied*, 475 U.S. 1111, 106 S.Ct. 1522, 89 L.Ed.2d 920 (1986), this court stated:

> In determining the sufficiency of evidence on appeal, this court must determine whether viewing the evidence and all reasonable inferences in the light most favorable to the government, a reasonable trier of fact could find evidence establishing each element of the crime beyond a reasonable doubt.

*Wood*, 780 F.2d at 557. *See also United States v. White*, 788 F.2d 390, 393 (6th Cir.1986).

The *Glasser* Court also provided us with a standard to use in evaluating appellant's claims that the lower court erred in its *admission* of certain testimony and in its *limitations* upon appellant's cross-examination of the government's key witness. The *Glasser* Court held that both areas are within the *sound discretion* of the lower court and the lower court's rulings should be upheld absent an abuse of discretion. *Glasser*, 315 U.S. at 81, 83, 62 S.Ct. at 470, 470–71.

This rule of review does not apply to a lower court's legal conclusions or to any issue of law which may be presented to us on appeal. Our review of such questions, unlike our "clearly erroneous" review of a lower court's factual findings, is, of course, plenary and *de novo*.

It is with these standards in mind that we review the appellant's claims.

## II.

The appellant first asserts that the government did not demonstrate that his conviction on Count 17 was supported by sufficient evidence. That Count alleged, in pertinent part, that Scartz and Sandra Cramblett fraudulently used two counterfeit credit cards to charge over $1000 in merchandise at the Furniture Connection in Mason, Ohio.

This claim is without merit. There was certainly enough evidence presented that, when viewed in a light most favorable to the government, the jury's verdict would be supported.

Under 18 U.S.C. § 1029(a)(1) (1982), the government must demonstrate that the defendant used a counterfeit credit card knowingly and with intent to defraud and that such use in some way affected interstate commerce. The evidence presented by the government demonstrated that Scartz aided, abetted, assisted, facilitated and directed Sandra Cramblett to use two counterfeit credit cards at the Furniture Connection. Paul Marzluff, owner of the Furniture Connection, testified that Scartz spoke to him over the telephone and told him he was sending a woman to buy furniture at his store with credit cards "that would not probably be good." One day after this conversation, Marzluff testified, a "pudgy blonde," later identified as Cramblett, showed up at his store and said "here are the cards." She made two purchases on the cards, yet took no furniture. Marzluff testified that he "called the authorization through to the bank" and received approval. Later, however, he sufficiently backdated the charge slips so that the banks would not honor them.

Scartz claims that interstate commerce was not affected and the offense was not completed because no one suffered a loss. Both contentions are baseless. Inasmuch as banking channels were used for gaining authorization approval of the charges on the cards, interstate commerce was affected. Secondly, 18 U.S.C. § 1029 does not require that the government prove an actual loss occurred.

The appellant also claims that Marzluff was not a credible witness. As a reviewing court, however, we cannot make an independent determination as to Marzluff's credibility. Rather, that issue was for the jury and apparently they found him credible. Having so determined, the evidence was sufficient to sustain a guilty verdict on Count 17.

### III.

Appellant raises a number of claims relating to the lower court's conduct in its admission of testimony, its limitations upon his counsel's ability to cross-examine the government's key witness and its refusal to declare a mistrial when so requested.

Upon a review of the record pursuant to our limited standard of review, we find no evidence that the lower court abused its discretion with regard to these actions during the trial.

### IV.

Appellant's final and most important contention is that the lower court used the wrong standard in determining the existence of a conspiracy and the appellant's membership therein.

The correct standard to be employed by a lower court in making such preliminary findings was set out recently by the United States Supreme Court in *Bourjaily v. United States*, — U.S. —, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). The Court held that such findings must be made pursuant to a "preponderance of the evidence" standard. The Court also held that a trial court may consider hearsay statements, along with other evidence, in making its preliminary findings. *Bourjaily*, 107 S.Ct. at 2778–79, 2781–82.

The appellant argues that the trial court erred because it considered hearsay statements and because it used a "slight evidence" standard to determine whether Scartz was a member of the conspiracy. The appellant submits that to the extent authority exists for such a standard in this circuit, *United States v. Chambers*, 382 F.2d 910 (6th Cir.1967), it must be abandoned as inconsistent with *Bourjaily*.

In finding that a conspiracy existed and that the appellant was a member thereof, the lower court correctly cited and used the preponderance of the evidence standard. In making its decision, the lower court stated:

> In order for the Government to admit evidence of alleged co-conspirators pursuant to Federal Rule of Evidence 801(d)(2)(E), the Government, of course, is required to first produce evidence of the conspiracy sufficient to meet the standard enunciated in United States

verses Enright and United States verses Vinson [sic].

Before being able to take advantage of the co-conspirator exception to the hearsay rule, the Government then must show by a *preponderance of the evidence:*

First, that the conspiracy existed;

Second, that the Defendant against whom the hearsay is offered was a member of the conspiracy; and,

Third, that the statement was made in the course of and in furtherance of the conspiracy.

. . . .

After carefully considering all of the evidence, the Court feels that considering the evidence and the permissible inferences drawn from that evidence, the Government has met its burden to meet the standard required by Enright and Vinson [i.e., the preponderance standard]. If, however, there is any doubt, it is quickly disspelled by a further consideration of the proffered co-conspirators' statements themselves, which, under the law of this Circuit, may be considered in determining whether the Government has met its burden.

J.App. at 310–11, 313 (emphasis added).

Thus it would appear that not only did the lower court use the correct standard, but the court also seems to point out, in the last paragraph, that it was not even necessary for it to consider any hearsay because the direct and circumstantial evidence was dispositive of the issue. Therefore, no error was committed by the lower court in this regard.

■ The appellant, however, does raise an important issue as to the viability of *Chambers,* and indeed points out that *Chambers* was cited by the lower court for the proposition that once a conspiracy is found to exist, slight evidence may be sufficient to connect a defendant with it. J.App. at 313. To the extent that the appellant argues that the language found in *Chambers* suggests a different standard than preponderance of the evidence, that argument is rejected. This court has specifically set out the preponderance standard as governing this issue. This standard was first set out in *United States v. Enright,* 579 F.2d 980, 985–87 (6th Cir. 1978) and reaffirmed in *United States v. Vinson,* 606 F.2d 149, 152 (6th Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). We now interpret *Chambers*'s "slight evidence" language as referring to the *nature* and *extent* of a member's involvement in a conspiracy, *not* to the initial question of whether one is indeed a member of such a group. *See also United States v. Marsh,* 747 F.2d 7, 13 (1st Cir.1984) (interpreting the "slight evidence" standard to refer only to the "breadth of [the] connection" of a defendant to a conspiracy). This interpretation prevents any inconsistency between opinions rendered by this court. It also prevents any conflict with the Supreme Court's decision in *Bourjaily.* However, it also means that appellant's final claim is without merit.

Therefore, for all of the foregoing reasons, the appellant was not deprived of a fair trial and his jury conviction is hereby AFFIRMED.