861 F.2d 722
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Calvin DEAN, Defendant-Appellant.
 No. 88-5343.
 United States Court of Appeals, Sixth Circuit.
 Nov. 1, 1988.
 
 Before KEITH, RALPH B. GUY Jr. and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Defendant appeals his conviction for conspiracy to possess and cash stolen United States Treasury checks, possession of stolen mail, and forgery and cashing of a stolen United States Treasury check. We affirm.
 
 I.
 
 2
 Defendant Calvin Dean was indicted by a grand jury on August 10, 1987, along with Rodney Tunstall, Eric Bernard Gipson, Derrick Tunstall, and Marcus Dannell Graham for conspiracy, illegally possessing, forging, and cashing stolen United States Treasury checks. Prior to trial, all of the named defendants with the exception of Calvin Dean and Derrick Tunstall pleaded guilty. After the first day of Derrick Tunstall's joint trial with Calvin Dean, Tunstall pleaded guilty. Dean's trial continued and he was found guilty on all counts in which he was charged, save Count III, which was dismissed at the government's request. On March 11, 1988, the district court sentenced him to five two-year terms to run concurrently for Counts I, II, VII, VIII, and IX of the indictment, and a one-year term also to run concurrently on Count IV. Defendant now appeals his convictions.
 
 
 3
 The evidence introduced at trial concerned defendant's activities with respect to five United States Treasury checks on three separate occasions. Derrick Mitchell testified that on January 23, 1986, Calvin Dean, Rodney Tunstall, and Mitchell left Dean's home in Rodney Tunstall's car. On the way out of defendant's house, Mitchell was shown a United States Treasury check made payable to Thomas W. Haslett in the amount of $337.00. Mitchell testified that the three drove first to a photograph identification shop and there obtained an identification for Mitchell in the name of Thomas W. Haslett. They then drove to a Piggly Wiggly supermarket where Mitchell tried to cash the check, but failed. The three then drove to the Liberty grocery store where Mitchell cashed the check and gave the proceeds to Rodney Tunstall and Calvin Dean. They, in turn, gave Mitchell forty dollars for his effort in cashing the check.
 
 
 4
 Marcus Graham testified that on February 3, 1986, Rodney Tunstall and Calvin Dean had picked Graham up at his home in Rodney Tunstall's car. He testified that the three went through several mailboxes looking for brown envelopes containing checks. In one mailbox, Graham found a check made payable to Zola P. Murrell in the amount of $624.00. The three men then went to pick up several females who apparently were to cash the Murrell check and other checks made out to female payees. After picking up the women, they went to a photographic studio and obtained photographic identifications. They then went to a store where the checks were cashed and Graham received $150 for stealing the Zola Murrell check.
 
 
 5
 Thomas W. Haslett and Zola P. Murrell both testified that they regularly received monthly Social Security checks by mail, and that they had not received their checks in January and February of 1986. Rodney Tunstall testified and corroborated the previous testimony of Derrick Mitchell and Marcus Graham although he was apparently somewhat confused about the dates of each incident.
 
 
 6
 Eric Gipson testified that on February 8, 1986, Derrick Tunstall called him and told him that he had a job for him. Gipson was picked up in a car driven by Robert Dean in which Derrick Tunstall and Calvin Dean were passengers. While the four men were driving around, Derrick Tunstall produced a check payable to Roy Hemmer in the amount of $872.00. The four men drove to a photographic identification shop and obtained identification for Gipson in the name of Roy Hemmer. They then drove to several stores attempting unsuccessfully to cash the Hemmer check. Finally, they went to a liquor store and Eric Gipson again attempted to cash the check. While the clerk in the store was holding the check and the identification in the name of Roy Hemmer, a police officer entered the store. Seeing the officer, Gipson ran out of the store toward the car. The officer followed Gipson and apprehended him outside the car along with the three other men.
 
 
 7
 Officer Terry Landrum testified that on February 8, 1986 at approximately 4:55 p.m. he entered T & F liquor and saw Eric Gipson in the store. When Gipson fled, the clerk told Officer Landrum that Gipson had been trying to pass a stolen check. Officer Landrum ran after Gipson, and caught up to him just as he jumped into a car. Officer Landrum stopped the car and apprehended Gipson, Derrick Tunstall, Robert Dean, and Calvin Dean. He searched the car and found two United States Treasury checks under the armrest in the center of the front seat. The first was made out to Ann Collins in the amount of $180.00, and the second to Georgia Clark in the amount of $78.00.
 
 
 8
 After Derrick Tunstall, Calvin Dean's co-defendant, changed his plea on the morning of the second day of trial, counsel for Calvin Dean moved for "a mistrial or resetting." The district court denied the motion and instructed the jury as follows:
 
 
 9
 As you can see, Mr. Derrick Tunstall and his attorney are not in the courtroom. The case, Ladies and Gentlemen, has been resolved as to Mr. Derrick Tunstall and has been disposed of. He is no longer a defendant in this trial, and you are not to concern yourselves in anyway or to speculate as to the reason for this, and you are not to draw any inferences from the fact as to the case against Mr. Calvin Dean, who is the remaining defendant in this case.
 
 II.
 
 10
 Dean argues first that the district court erred in denying his motion for mistrial or continuance after co-defendant Derrick Tunstall changed his plea mid-trial. Dean's argument is without merit. In United States v. Bavers, 787 F.2d 1022, 1028 (6th Cir.1985), this court addressed an identical situation. There, as here, the district court instructed the jury not to consider the co-defendant's status when evaluating the evidence against defendant. The court concluded that the co-defendant's change of plea was not a basis for mistrial.
 
 
 11
 It has long been held the decision to grant or deny a continuance is a matter left to the discretion of the trial court. Lockett v. Arn, 740 F.2d 407, 413 (6th Cir.1984), cert. denied, 106 S.Ct. 3332 (1986); United States v. Allen, 522 F.2d 1229, 1233 (6th Cir.1975), cert. denied, 423 U.S. 1072 (1976). In this case, the district court clearly did not abuse its discretion in refusing to grant a continuance. Derrick Tunstall did testify against defendant with regard to the Roy Hemmer and the Ann Collins checks. However, his testimony served only to corroborate that of Eric Gipson and Officer Landrum with regard to the two checks. Dean has not shown how his defense would have benefited from any delay in trial after Derrick Tunstall changed his plea. Indeed, it is difficult to imagine how the defense could have been conducted any differently.
 
 III.
 
 12
 Dean next argues that the district court erred in admitting into evidence the Ann Collins check which was discovered by Officer Landrum during his search of the automobile after the arrest of Gipson, Derrick Tunstall, Robert Dean, and Calvin Dean. Dean is precluded from raising the legality of the search on appeal because he did not raise it before the trial judge. Fed.R.Cr.P. 12(b)(3) provides that motions to suppress evidence must be raised prior to trial. Fed.R.Cr.P. 12(f) provides that "[f]ailure by a party to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (c), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver." In United States v. Sachs, 801 F.2d 839, 847 (6th Cir.1986), defendant made a motion to suppress physical evidence on the last day of testimony. The court held that by not raising the motion prior to trial as required by Fed.R.Cr.P. 12(b)(3), defendant had waived the objection under Fed.R.Cr.P. 12(f). See also United States v. Worthington, 698 F.2d 820, 824 (6th Cir.1983); United States v. Wood, 609 F.2d 246, 248 (6th Cir.1979) (per curiam).
 
 
 13
 In this case, defendant did not raise an objection to the introduction of the Ann Collins check at anytime during the trial. He has therefore waived any objection to admission of the check into evidence. Fed.R.Cr.P. 12(f) does allow the court to grant relief from the waiver for cause shown. However, defendant has not offered any reason whatsoever for his failure to object in the trial court to the introduction to the check. He therefore may not raise the objection in this court.
 
 IV.
 
 14
 Finally, defendant argues that his conviction was not supported by sufficient evidence. "The standard of review for insufficiency claims is: Viewing the evidence in the light most favorable to the prosecution, is the evidence 'such that a reasonable mind might fairly find guilt beyond a reasonable doubt.' " United States v. Ashworth, 836 F.2d 260, 263 (6th Cir.1988) (quoting United States v. Ayotte, 741 F.2d 865, 876 (6th Cir.), cert. denied, 469 U.S. 1076 (1984)). In this case, the evidence against defendant was overwhelming. His various co-conspirators testified against him with regard to each of the three incidents at issue. At most, the defendant's insufficiency of the evidence argument attacks the credibility of the testimony of his former co-defendants. Of course, it is not the function of this court to second-guess jury judgments on issues of credibility where, as here, the evidence viewed most favorably to the government supports the verdict of the jury. United States v. Scartz, 838 F.2d 876, 878 (6th Cir.1988).
 
 V.
 
 15
 We hold that all of Dean's assignments of error are without merit. His conviction is therefore AFFIRMED.