862 F.2d 316
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David BLANKENSHIP (87-6074) and Ernie Robinson, (87-6079)
Defendants- Appellants.
 Nos. 87-6074, 87-6079.
 United States Court of Appeals, Sixth Circuit.
 Nov. 15, 1988.
Opinion Published in Full 870 F.2d 326.
 
 Before LIVELY and NATHANIEL R. JONES, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 NATHANIEL R. JONES, CIRCUIT JUDGE.
 
 
 1
 Defendants-appellants, Timothy David Blankenship and Ernie Robinson, appeal their jury convictions for causing a threatening letter to be delivered by the United States Postal Service in violation of 18 U.S.C. Sec. 876 (1982). For the reasons which follow, we affirm.
 
 I.
 
 2
 In November of 1985, Judge Robert Jackson, Circuit Judge for the Lincoln County (Kentucky) Circuit Court received an envelope addressed to "The Judge," which contained two threatening letters. Each of the letters bore signatures purporting to be those of Blankenship and Robinson. The police investigation revealed that Blankenship and Robinson were incarcerated in the Kentucky State Penitentiary ("the Penitentiary") at Eddyville, Kentucky and that Blankenship had been convicted of burglary in the Lincoln Circuit Court in late 1982. However, the sentencing judge in Blankenship's trial was Judge Henry Clay Cox, who retired in 1985, not Judge Jackson. Based on this investigation, Blankenship and Robinson were indicted on May 20, 1987 for allegedly causing a letter containing threatening communications to be deposited with the United States Postal Service in violation of 18 U.S.C. Sec. 876. At their three-day trial in August of 1987, both Blankenship and Robinson denied that they were involved in any way with the letters. They asserted that they had been "set up" for the crime by other inmates at the Penitentiary and pointed out that the stationery on which the letters were written was freely available to other inmates. Blankenship specifically noted that since he knew that the judge who sentenced him (Judge Cox) had retired in early 1985 he would not have sent a threatening letter to the "Judge" of Lincoln Circuit Court.
 
 
 3
 The primary evidence presented against Blankenship consisted of the following: he had been tried and sentenced in the Lincoln County courts; his purported signature was contained on one of the letters; and one of his fingerprints and half of his palm print were found on the back of one of the letters. Moreover, although the handwriting expert for the Kentucky State Police was unable to determine whether the signature which appeared on the letters was actually Blankenship's handwriting, the expert positively stated that the handwriting contained on the envelope's return address and on the letter purportedly signed by Robinson was indeed Robinson's handwriting.
 
 
 4
 On August 20, 1987, after considering this evidence, the jury returned guilty verdicts against Blankenship and Robinson. Both defendants filed timely notices of appeal which challenge several of the trial court's rulings.
 
 II.
 
 5
 The defendants' first argument is that the trial court erred as a matter of law in failing to allow them to review the grand jury testimony of Postal Inspector Joseph Kleinberg. Kleinberg testified on direct examination by the Government that he knew both of the defendants and that he was the person who took Blankenship's handwriting and fingerprint samples. Following this testimony, Blankenship's counsel asked the Government to produce Kleinberg's grand jury testimony. Blankenship maintained that he had a right to review this testimony pursuant to 18 U.S.C. Sec. 3500 which provides, in pertinent part, that
 
 
 6
 after a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement ... of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.
 
 
 7
 18 U.S.C. Sec. 3500(b) (1982) (emphasis added). After reviewing Kleinberg's grand jury testimony in camera, the trial court determined that the testimony was not discoverable because it was not related to Kleinberg's testimony on direct examination.
 
 
 8
 Our review of a trial court's conclusion as to the discoverability of Kleinberg's grand jury testimony is plenary and de novo. United States v. Scartz, 838 F.2d 876, 878 (6th Cir.1988). After having reviewed the relevant testimony, this court agrees with the district court's finding that the testimony is not related to the subject matter to which Kleinberg testified on direct examination. Therefore, we hold that the trial court did not err in failing to require the Government to produce Kleinberg's grand jury testimony.
 
 III.
 
 9
 The defendants also challenge several of the trial court's evidentiary rulings. We review a trial court's evidentiary rulings pursuant to an abuse of discretion standard. United States v. Scartz, 838 F.2d 876, 878 (6th Cir.1988). For the following reasons, we find all of the defendants' challenges to be without merit.
 
 A.
 
 10
 The defendants argue that the trial court erred in allowing the Government to impeach a defense witness by introducing the nature of the witness's prior criminal conviction. The trial court allowed the Government to ask the witness the following question:
 
 
 11
 Mr. Shackles, are you the same Mark Shackles who was convicted ... of the felony crime of sodomy for which you received a sentence of 20 years?
 
 
 12
 J.App. at 114. Defending this question, the government argues that the jury could better decide whether to believe the witness's testimony if they knew the nature of the witness's felony conviction. The defendants, however, maintain that the jury should only be informed as to whether the witness has been previously convicted of a felony and that evidence concerning the nature of the felony or length of the sentence imposed should not be allowed into evidence.
 
 Fed.R.Evid. 609(a) provides that
 
 13
 For the the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted ... but only if the crime ... was punishable by ... imprisonment in excess of one year ... and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant....
 
 
 14
 Most of our cases concerning impeachment by evidence of prior criminal convictions involve the defendant's prior conviction rather than a defense witness's prior conviction. See, e.g., United States v. Huddleston, 811 F.2d 974 (6th Cir.1987); United States v. Jones, 647 F.2d 696 (6th Cir.), cert. denied, 454 U.S. 898 (1981). Indeed, this court has recognized that "prejudice to the defendant is normally greater where the defendant's own character is being attacked" than where a defense witness's character is being attacked. United States v. Huddleston, 811 F.2d at 978.
 
 
 15
 In this case, the Government impeached the credibility of Mark Shackles, one of Robinson's witnesses. One of Robinson's defenses to the criminal charges was that another prisoner had mailed the letters in an attempt to "set him up." Shackles testified that it was a common occurrence in prison for one inmate to set up another inmate for an offense rather than to directly attack the inmate. While Shackles' testimony may have helped bolster Robinson's defense, we cannot say that the district court abused its discretion in concluding that the probative value of admitting evidence concerning Shackles' prior conviction was substantially outweighed by the prejudicial effect to the defendants. Therefore, we affirm the trial court's ruling which allowed the evidence of Shackles' prior conviction to be entered in evidence.
 
 B.
 
 16
 The defendants also argue that the trial court erred in allowing the Government to introduce evidence that Robinson and Blankenship had been previously disciplined together at the Penitentiary and that Robinson had sent a similar threatening letter in the past. The defendants assert that this evidence had little probative value as to the crimes charged and that the evidence was very prejudicial to them. The Government claims, however, that the evidence concerning the defendants' disciplinary records was offered to show they had acted in concert with respect to other "bad acts." Moreover, the Government asserts that the evidence concerning the threatening letter previously written by Robinson was offered for the purpose of showing Robinson's intent and knowledge as well as absence of any "mistake" by Robinson.
 
 
 17
 The defendant's objections are based on Fed.R.Evid. 404(b) which provides that
 
 
 18
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 19
 Applying Rule 404(b) to the instant case, we find that the defendants' disciplinary records were admissible for the purpose of showing proof of the defendants' opportunity to commit the crime charged. Moreover, the evidence concerning the prior threatening letter was admissible for the purpose of proving Robinson's intent in this case. Although we believe that the evidence was prejudicial to the defendants, we do not believe that the probative value of the evidence was substantially outweighed by the prejudice to the defendants. Therefore, we find the district court did not abuse its discretion in finding that the evidence was admissible.
 
 IV.
 
 20
 Before closing arguments for the defense, Blankenship moved for a judgment of acquittal. He argued that the court did not have proper jurisdiction over the case because any possible mailing would have occurred in the Western District of Kentucky--the location of the Penitentiary. The trial court dismissed this motion as untimely.
 
 
 21
 The controlling statute, 18 U.S.C. Sec. 3237 (1982), provides that any person who is "indicted under section [] ... 876 ... shall, upon motion duly made, be entitled as of right to be tried in the district in which the matter mailed or otherwise transmitted was first set in motion." (Emphasis added.) Fed.R.Crim.P. 22 further provides that a "motion to transfer ... may be made at or before arraignment or at such other time as the court or these rules may prescribe." Finally, Local Rule 6(a)(3) for the Eastern and Western Districts of Kentucky provides that, unless otherwise permitted, motions in criminal cases must be filed with the court eleven days after the criminal defendant has been arraigned. Since the defendants were arraigned on June 12, 1987, the trial court properly ruled that this August 19, 1987 motion for a change of venue was untimely.
 
 V.
 
 22
 The defendants' final argument is that the elements of a section 876 violation include a requirement that the defendant actually write the threatening communication. The defendants raised the issue of "authorship" in their motions for acquittal based on insufficient evidence and in a motion for acquittal based on the jury instructions. In determining the sufficiency of evidence on appeal, this court must determine whether viewing the evidence and all reasonable inferences in the light most favorable to the government, a reasonable trier of fact could find evidence establishing each element of the crime beyond a reasonable doubt.' " United States v. Scartz, 838 F.2d 876, 878 (6th Cir.1988) (quoting United States v. Wood, 780 F.2d 555 (6th Cir.), cert. denied, 475 U.S. 1111 (1986)). "[W]hen considering a claimed error or omission in jury instructions," a reviewing court "must consider the charge as a whole to see if it 'fairly and adequately' submits the issues and applicable law to the jury." Donald v. Wilson, 847 F.2d 1191, 1199 (6th Cir.1988) (quoting United States v. Martin, 740 F.2d 1352, 1361 (6th Cir.1984)).
 
 
 23
 Section 876 provides, in relevant part, that
 
 
 24
 Whoever knowingly ... deposits or causes to be delivered ... any communication ... addressed to any other person and containing any threat ... to injure the person of the addressee or of another, shall be fined not more than $1,000 or imprisoned not more than five years, or both.
 
 
 25
 The predecessor statute to section 876 provided that
 
 
 26
 Whoever shall knowingly deposit or cause to be deposited ... any written or printed letter or other communication ... addressed to any other person and containing any threat ... to injure the person of the addressee or of another shall be fined not more than $1,000, or imprisoned not more than five years, or both.
 
 
 27
 18 U.S.C. 1940 ed., Sec. 338a (emphasis added).
 
 
 28
 In considering the defendants' argument that Section 876 requires that the "mailer" of a threatening communication actually be the author of the communication, we find it significant that the current 18 U.S.C. Sec. 876 statute neither explicitly nor implicitly contains any such requirement. Further, we note that the original statute clearly anticipated that criminal liability would attach as a result of threatening communications which were "written" by the mailer or author or "printed" by the mailer or any other source. Since neither the text nor the history of the current statute supports the reading urged by the defendants, we conclude that "no purpose would be served by imposing" a judically-created requirement "that a person be the author of a threatening communication for criminal liability to attach." United States v. Bloom, 834 F.2d 16, 18-19 (1st Cir.1987). While we recognize that several circuit courts of appeals have held that there is an authorship requirement, see, e.g., United States v. Deshazo, 565 F.2d 893 (5th Cir.), cert. denied, 435 U.S. 953 (1978); United States v. Reynolds, 532 F.2d 1150 (7th Cir.1976); United States v. Sirhan, 504 F.2d 818 (9th Cir.1974); Petchel v. United States, 369 F.2d 769 (8th Cir.1966), we are constrained to disagree. Since, in our view, "[s]imple logic dictates that a requirement that the accused write the letter is not an element of a Sec. 876 violation," we hold that Section 876 contains no such requirement. United States v. Stotts, 792 F.2d 1318, 1323 (5th Cir.1986).
 
 
 29
 Returning to the instant case, in viewing the evidence and all reasonable inferences in the light most favorable to the Government, we conclude that a reasonable trier of fact could find evidence establishing each element of the crime charged beyond a reasonable doubt. Since we find no support for the contention that Congress intended to punish only the "author" and not the "mailer" of a threatening communication, we hold that the trial court did not err in failing to grant the defendants' motions for acquittal. For the same reason, we also hold that the trial court properly instructed the jury concerning the elements of a section 876 violation.
 
 VI.
 
 30
 Because we find that all of the defendants arguments are without merit, we hereby AFFIRM their jury convictions.