**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Godwin FOFO, also known as Glenn
Williams;  Charles Boateng,
Defendants—Appellants.**

No.  99–3654, 99–3973.

United States Court of Appeals,
Sixth Circuit.

May 20, 2002.

Before DAUGHTREY, GILMAN, and JOHN R. GIBSON,* Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Godwin Fofo and Charles Boateng appeal from their convictions of attempt to possess heroin with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) (1994) and 18 U.S.C. § 2 (1994), and Fofo appeals from the sentence imposed on him. Fofo argues that the district court[1] erred in failing to sever his case from Boateng's, that there was not enough evidence to support the conviction, and that the indictment charging him with attempt to possess "more than 500 grams" of heroin did not adequately specify the amount of drugs. Boateng argues that evidence used against him was obtained in violation of his Fourth Amendment rights and should have been suppressed. We affirm the convictions and Fofo's sentence.

I.

The investigation that culminated in these convictions began on October 4, 1998, when FBI Special Agent Gerald Clark received information from a confidential informant that a large amount of heroin had arrived in the Dayton, Ohio area. Clark had known the informant for three years and had always received reliable information from the informant in the past. The informant said that two West Africans had shown the informant's friend about 750 grams of high-quality heroin, and had asked him to find them a buyer in Dayton. The informant said the West Africans had given his friend two telephone numbers in the Cincinnati area where he could reach them when he had found a buyer. The FBI promptly traced the locations and subscribers of the telephone numbers.

The next day, Clark met with the informant and his friend, in order to confirm the informant's story. The informant's friend verified the telephone numbers for Clark by showing him that they were in his pager's memory. The friend said that the West Africans wanted about $120,000 for the heroin. Clark knew this to be a reasonable price for 750 grams of heroin. The friend told Clark that he had seen the merchandise and that he could tell it was heroin of the highest quality the Dayton area had seen. The friend added that the West Africans would be driving a maroon Mercury Sable rental car. Clark told the friend that if the West Africans contacted him, he should tell them that he was trying to find a buyer and that he would try to set up a meeting that day.

In the meanwhile, Cincinnati police set up surveillance of the addresses corresponding to the phone numbers the friend had provided. Upon receiving word that surveillance was in place, at about 4:25 in the afternoon of October 5, the friend called the would-be sellers, telling them he

---

* The Honorable John R. Gibson, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. The Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio.

had arranged a deal and they should come to Dayton for a meeting.

One of the addresses under surveillance was 7100 Eastlawn Avenue in Cincinnati, the apartment where Boateng lived. Police saw Fofo leave the apartment and drive off in a green Mercury Sable. Police were able to learn that the car had been rented from Budget Rent–a–Car, and that earlier the same day, the renter had exchanged a maroon car for a green one. Later, police saw Boateng leave the apartment, wearing colorful, African-style clothing. The surveillance officer reported that both Boateng and Fofo were black. Boateng and Fofo soon returned to the apartment. Then, shortly after 5:00, both emerged again. This time, Boateng was carrying a dark green trash bag with a bulge in it about the size of a soccer ball. The two men got in the Mercury Sable and drove toward Interstate 75, which connects Cincinnati and Dayton. Police intercepted them about three quarters of a mile before the entrance ramp onto I–75. (The police chose to intercept the car before getting onto the interstate because they were concerned about heavy traffic on I–75.) As Boateng and Fofo caught sight of the marked police cruiser, Fofo leaned forward to the floorboard of the car. After stopping the car, police removed Fofo and Boateng from the car. Police then searched the car and found a bag containing 670.48 grams of heroin underneath the passenger's seat where Fofo had been sitting. Fofo and Boateng were arrested.

After the arrest and seizure of the bag of heroin, further evidence surfaced, which was presented at trial. The second phone number the sellers gave the informant's friend was listed to Leslie Goldsmith. Goldsmith was engaged to marry Fofo, and she was used to receiving phone calls for him when he was not at her home.

Earlier in the day of October 5, police surveilling Fofo had seen him at 1783 Yorktown. After Fofo was arrested, police went to that address and knocked on the door. Ouleye Dieng answered the door and allowed the police to come in. She said she was Fofo's fiancee and that she and Fofo lived there. Dieng consented to a search of the apartment, and police found a bag full of money under the sink in the bathroom. The bag contained about $18,850. Dieng said she did not know about the money or where it came from. While police were talking with her, Fofo telephoned and spoke to Dieng. She told police Fofo instructed her to say that the money did not belong to either of them.

Boateng and Fofo were indicted for attempt to possess more than 500 grams of heroin with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (aiding and abetting). Boateng moved to suppress the evidence obtained from the warrantless search of the rental car in which the heroin was found, and Fofo moved to sever his trial from Boateng's. The district court denied both motions. After a jury trial, both defendants were convicted. The district court sentenced Boateng to 97 months' imprisonment and four years of supervised release and Fofo to 78 months' imprisonment and five years of supervised release.

## II.

Boateng's sole assignment of error is that the district court should have suppressed the bag of heroin discovered in the warrantless search of the rental car because police lacked probable cause to stop the car. We review the district court's findings of fact for clear error and its conclusions of law de novo. *United States v. Smith*, 263 F.3d 571, 581 (6th Cir.2001).

Law enforcement officers may search an automobile without a warrant when they

have probable cause to believe it contains contraband. *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996); *United States v. Graham*, 275 F.3d 490, 509–10 (6th Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 1625, —— L.Ed.2d —— (2002). Probable cause is reasonable grounds for belief, supported by more than mere suspicion, or in another formulation, "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Padro*, 52 F.3d 120, 122–23 (6th Cir.1995) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

■ There is no question but that the collective knowledge of law enforcement personnel cooperating on this case gave them probable cause to believe that heroin was being transported in the rental car. To mention only the high points, police interviewed a witness who had seen the heroin in the possession of two West Africans who wanted to sell it in Dayton. These men gave the witness phone numbers, one of which was registered to Boateng. Police set up surveillance at the apartment served by one of the telephone numbers and saw two black men coming and going from the apartment, one of whom was wearing clothes that appeared to be of African design. The witness had said the men would be driving a maroon Mercury Sable rental car; Boateng and Fofo were in fact driving a rented Mercury Sable, although the color was green rather than maroon. The witness said the men had a large amount of heroin. Boateng was seen carrying something out to the car in a trash bag, with a bulge the size of a soccer ball. Around 4:30, the witness called the telephone number the men had given him and told them to come to Dayton. About 5:00 Boateng and Fofo left, carrying the bag, and headed toward I–75, which was the route from Cincinnati to Dayton.

These facts amply support the district court's conclusion that police had probable cause to believe the Mercury Sable contained contraband. Boateng's assignment of error has no merit.

### III.

Fofo argues that the precise amount of drugs attributable to him should have been determined by the jury, and that the district court's finding that Fofo possessed a greater amount than that specifically named in the indictment violated his rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We review constitutional challenges to a sentence de novo. *United States v. Campbell*, 279 F.3d 392, 397 (6th Cir.2002).

The indictment charged Fofo under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 with attempt to possess "in excess of 500 grams of heroin," with intent to distribute it. The parties stipulated that the heroin in the bag weighed 670.48 grams. At sentencing, the district court adopted the presentence investigation report's use of the guideline range of a base offense level of 28 under U.S.S.G. § 2D1.1(c)(6) (Nov. 1998), which is prescribed for offenses involving 400 to 700 grams of heroin. The presentence report stated that the amount of drugs involved was 670.48 grams, but the district court did not make a finding on the specific amount involved. The court sentenced Fofo to 78 months, the lowest sentence within the guideline range.

Fofo argues that he had to be indicted for a specific amount of drugs under *Apprendi*. This argument has no merit. In *Apprendi*, the Supreme Court stated, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530

U.S. at 490, 120 S.Ct. 2348. The *Apprendi* doctrine has been interpreted in this circuit to require the amount of drugs to be treated as an element of the offense when the drug amount determination leads to a sentence that is higher than the maximum otherwise authorized by statute, or when the sentence is based on a mandatory minimum that would not be applicable without the drug amount. *United States v. Hough*, 276 F.3d 884, 890 (6th Cir.2002), *cert. denied*, —— U.S. ——, 122 S.Ct. 1986, 152 L.Ed.2d 1042 (2002). As long as the sentence does not transgress these limits, the *Apprendi* doctrine does not require that "the precise amount of drugs must always be submitted to the jury." *Id.*

The penalties for violation of section 841(a) are set out in section 841(b). For violations involving 1 kilogram or more of heroin, the sentence is not less than 10 years or more than life, § 841(b)(1)(A); for 100 grams or more, the sentence is not less than 5 years or more than 40 years, § 841(b)(1)(B); and for indeterminate amounts, the sentence is up to twenty years, § 841(b)(1)(C). Fofo was indicted for possession of more than 500 grams, and he was sentenced to six and a half years. As in *Hough*, the sentence here was "safely lodged between the minimum required by the indictment and conviction, and the maximum allowed by statute." 276 F.3d at 890. Therefore, Fofo's sentence does not offend against the rule from *Apprendi*.[2]

## IV.

Fofo argues that the district court should have granted his motion to sever his case from Boateng's. We review a denial of severance for abuse of discretion. *United States v. Welch*, 97 F.3d 142, 147 (6th Cir.1996). The district court found that there would be no substantial prejudice from trying Boateng and Fofo together: "The trial strategy of both Defendants so far is to deny their involvement in the alleged crime. Thus, we do not find that the possible conflicts in defenses are so prejudicial to cause the jury to unjustifiably infer that both Defendants are guilty." Fofo has not demonstrated that the district court's reasoning or findings were incorrect or that the denial of severance was otherwise an abuse of discretion.

## V.

Finally, Fofo asserts that the evidence against him was insufficient to support his conviction.

Our standard of review in this case is limited. The United States Supreme Court in *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), set out the govern[ing] standard of appellate review in cases such as this one. The *Glasser* Court stated: "*It is not for us to weigh the evidence or to determine the credibility of witnesses.* The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it."

*United States v. Warner*, 971 F.2d 1189, 1195 (6th Cir.1992) (quoting *United States*

---

**2.** Though Fofo does not point it out, it appears that the "in excess of 500 grams" stated in the indictment was not actually submitted to the jury. However, the record shows that Fofo stipulated that the bag contained 670 grams of heroin. At any rate, Fofo's sentence was well under the maximum provided by section 841(b)(1)(C) for unspecified amounts of heroin, and the record gives us no reason to believe the district court intended to sentence Fofo under the mandatory minimum set out in section 841(b)(1)(B). Therefore, no *Apprendi* problem arises from the failure to submit the amount to the jury. *See United States v. Humphrey*, 287 F.3d 422 (6th Cir. 2002).

*v. Scartz*, 838 F.2d 876, 878 (6th Cir.1988)) (emphasis in original).

In this case, there is no doubt that the evidence was sufficient to support Fofo's conviction for aiding and abetting the possession of more than 500 grams of heroin with intent to distribute it. Police had information from an informant that two West African men were trying to sell a large amount of heroin in Dayton. The men provided the informant with two phone numbers. One of the phone numbers the men provided led to the apartment where Fofo and Boateng were getting into a car with a bag—just at the time the police informant had told the men to come to Dayton. Police stopped the car just before it got to the highway to Dayton. Fofo leant down to the floor of the car as he saw the police cruiser. A bag was under the seat where he sat, and the bag contained about 670 grams of heroin. The other phone number the men provided was registered to the apartment of Leslie Goldsmith, one of Fofo's fiancees. At Fofo's apartment, police found more than $18,000 in cash under the bathroom sink, and the other inhabitant of his apartment, another fiancee, said she did not know the money was there or where it came from. Fofo called the second fiancee from police custody and told her to tell the police the money did not belong to either of them.

The evidence was sufficient to support Fofo's conviction.

We affirm the convictions of Boateng and Fofo and the sentence imposed upon Fofo.